# CHARLESTON.

Town of Harrisville *v.* Public Service Commission and Utility Gas Company

(No. 5521)

Submitted January 14, 1927.   Decided May 3, 1927.

Public Service Commissions—*Finding of Public Service Commission, Based on Substantial Evidence, Will Not be Reviewed on Appeal.*

The findings of the Public Service Commission, based upon substantial evidence, will not be reviewed by this Court.

(Appeal and Error, 4 C. J. § 2861.)

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Woods, Judge, absent.

Suit by the Town of Harrisville to have cancelled an increase in rates granted to the Utility Gas Company by the Public Service Commission.

*Ruling of the Commission affirmed.*

*Robert Morris & S. A. Powell,* for petitioner.

*Homer Adams,* for respondent.

Litz, Judge:

The applicant, Utility Gas Company, is a public service corporation engaged in supplying protestant, Town of Harrisville, and its inhabitants with natural gas.   The municipality seeks to have cancelled, by an order of this Court, an increase

in rates granted by the Public Service Commission to the Utility Company.

The town of Harrisville constructed and, for many years, operated a gas plant supplying itself and its inhabitants with natural gas. On November 16, 1918, it sold and transferred the property to the Imperial Gas Company (a producer of natural gas), and further granted to the purchaser, its successors and assigns, the right and privilege of constructing and maintaining a system of mains, pipes and other appliances in and upon the streets and alleys of the town for the purpose of distributing and furnishing gas to it and its inhabitants for a term of ten years. The Imperial Company thereafter served the town and its inhabitants until January 31, 1921, when it conveyed and assigned the Harrisville plant and franchise to its subsidiary, the Utility Gas Company, which has since been performing the service.

The Utility Company does not produce any gas and was organized for the sole purpose of taking over and conducting the public service business of the parent corporation, from whom it has been purchasing gas with which to supply the town of Harrisville and its inhabitants.

The numerous questions raised by the protestant, for the most part, involve but two issues: (1) value of the property employed by the applicant in rendering the service; and (2) fair price for gas sold and delivered to it by the Imperial Company.

The Commission found the physical value of the property to be $9,500.00, and allowed 10 per cent. for going concern value, making a total value of $10,450.00 or $50.00 less than the assessed valuation. By adding $1,000.00 for working capital, a rate base of $11,450.00 was established. There was much other proof sustaining the finding of physical value, including the testimony of counsel for the town, given on its behalf in previous litigation between the parties, that at the time of the purchase by the Imperial Company the property was worth from $15,000.00 to $20,000.00. Additions since then amount to $3,961.26.

The Commission also fixed twenty cents per thousand cubic feet as a fair price to be paid by the Utility Company to the Imperial Company for gas as measured to the consumer. The Imperial Company received for one-third of the other gas marketed by it eighteen cents per thousand cubic feet, and twelve cents and thirteen cents for the remainder, or an average of 14.7 cents, delivered at the nearest connecting points on the lines of the purchasers. Reasons which we think justify the difference in price to the Utility Company and to other purchasers, stated by counsel for the applicant, follow: The Imperial Company cannot store its surplus gas, and must therefore sell it for the best prices obtainable, or lose much of it through drainage. It delivers gas to the other purchasers at their nearest gathering or transmission lines, while it delivers to the Utility Company ready for distribution to consumers, bearing the loss resulting from transmission of gas to the town and distribution to the consumers. This loss, in distribution alone, according to best estimates, is 10 per cent. The Imperial Company delivered to other purchasers only its surplus gas, while it takes the responsibility of first furnishing at all times an adequate supply to the Utility Company.

The wholesale prices to local producers, like the Imperial Company, are fixed by a few large gas producing corporations. These large producers, however, do not sell gas at the same prices. For example, the Hope Natural Gas Company pays the Imperial Company only 12c to 14c for surplus gas, while it charges the Imperial Company 30c. So far as the market prices are applicable, the current local market prices for public service gas to consumers afford the correct basis of comparison. For several years the prevailing market price in Ritchie county for public service gas to consumers has been 40c, less 2c discount for prompt payment, or 38c net, which, on the basis of the allowance by the Commission to the Utility Company for distributing the gas to consumers, will fix the price for public service gas as between the Imperial and the Utility Companies at about 24c or 25c.

It would serve no useful purpose to prolong this opinion in further discussion of the assignments of error, which, in our opinion, involve issues of fact depending upon conflicting evidence. We cannot substitute our judgment for the judgment of the Commission, on the weight of evidence. Its findings are presumed to be reasonable, lawful and correct, and will not be set aside by this Court if based upon substantial evidence. ''Findings of fact by the Public Service Commission, based upon evidence to support them, generally will not be reviewed by this Court.'' *United Fuel Gas Co. v. Public Service Commission,* 73 W. Va. 571, 80 S. E. 931; *Mill Creek Coal Co.* v. *Public Service Commission,* 84 W. Va. 662, 100 S. E. 557, 7 A. L. R. 108; *City of Charleston* v. *Public Service Commission,* 86 W. Va. 536, 103 S. E. 673; *City of Huntington* v. *Public Service Commission,* 89 W. Va. 703, 110 S. E. 192; *Baltimore & Ohio Railroad Co.* v. *Public Service Commission,* 90 W. Va. 1, 110 S. E. 475.

Nor will such findings be disturbed on appeal unless the Commission has acted so arbitrarily and unjustly as to fix rates contrary to the evidence, or without evidence to support them. *Interstate Commerce Commission* v. *Union Pacific Railroad Co.,* 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. 308; *United Fuel Gas Co.* v. *Public Service Commission,* cited.

The value of evidence in rate proceedings varies, and the weight to be given to it is peculiarly for the body experienced in rates, and familiar with the intricacies of rate making. *Interstate Commerce Commission* v. *L. & N. Railroad Company,* 229 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431. ''An order of the Public Service Commission fixing rates to be charged by a public service utility, within the constitutional and legislative power of the Commission, will not be disturbed unless it appears that the finding of fact on which the order is based is contrary to evidence, or without evidence, or there has been a misapplication of legal principles; and where there is a substantial conflict of evidence on any question of fact, the probative value accorded by the Commission to such evidence will not be disturbed.'' *Pittsburgh &*

*West Virginia Gas Co.* v. *Public Service Commission,* 101
W. Va. 63.

The ruling of the Commission is

*Affirmed.*